**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BRIAN SIMMONS,

                              Petitioner,

          - v -                                        Civ. No. 9:15-CV-0043
                                                              (TJM/DJS)
SUPERINTENDENT,

                              Respondent.

**APPEARANCES:**                              **OF COUNSEL:**

BRIAN SIMMONS
Petitioner, *Pro Se*
11-A-2312
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

HON. ERIC T. SCHNEIDERMAN               MATTHEW B. KELLER, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**DANIEL J. STEWART**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

*Pro se* Petitioner Brian Simmons seeks a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. §

2254, challenging a 2011 conviction, in New York State Supreme Court, Schenectady County, of

Assault in the First Degree (N.Y. PENAL LAW § 120.10).  Dkt. No. 1, Pet.  For the reasons that

follow, the Court recommends that the Petition be **denied** and **dismissed**.

**I.  BACKGROUND**

**A.  Procedural Background**

On May 24, 2010, Petitioner was indicted by a Schenectady County grand jury on a single count of Assault in the First Degree, in violation of § 120.10(1) of the New York Penal Law ("Penal Law"). Dkt. No. 7-1, State Court R. [hereinafter "R."] Part 1 at p. SR 164. On June 11, 2010, Petitioner was arraigned before the New York State Supreme Court, Schenectady County, and a plea of not guilty was entered on his behalf. Dkt. No. 7-5,[1] Arraignment Tr., dated June 11, 2010, at p. 4. On September 15 and 27, 2010, a pre-trial *Huntley* hearing was held before Judicial Hearing Officer Michael C. Eidens, concerning certain statements made by Petitioner as he was being taken into custody. *Huntley* Hr'g Tr., dated Sept. 15 & 27, 2010. On March 7, 2011, a jury trial commenced before the Honorable Polly A. Hoye, Schenectady County Court Judge . Dkt. No. 7-5, Trial Tr.

The following facts were adduced at trial. Around February or March 2009, Joel Winkler, Jr., who was twenty-five years old at the time of the trial, began spending time with Erika Barrett. Trial Tr. at pp. 563 & 1059. In September of that year, Winkler began dating Barrett, who was eighteen at the time and lived with her parents. *Id.* at pp. 566 & 1059-60. Barrett's parents did not approve of Winkler, who smoked marijuana regularly with Barrett. *Id.* at pp. 747-49 & 1062-63. Shortly after Barrett and Winkler began dating, on September 23, 2009, Barrett's eighteenth birthday, Barrett moved in with her aunt and uncle, Penny ("Penny") and Brian Simmons ("Petitioner") in Rotterdam, New York. *Id.* at pp. 1063-64. Barrett saw Winkler almost daily while she lived with Penny and Petitioner; most days after he got off work at four o'clock, Winkler would come pick Barrett up and they would go to his house and watch tv or play Playstation. *Id.* at pp.

---

[1] Docket entry number 7-5 includes transcripts for the following proceedings: Arraignment Tr., dated June 11, 2010; *Huntley* Hr'g Tr., dated Sept. 15 & 27, 2010; Trial Tr., dated Mar. 7, 8, 9, 10, 11, 14, 15, & 16 2011. The Trial Transcript continues through docket entry numbers 7-6, 7-7, 7-8, & 7-9. Docket entry number 7-9 also contains the Sentencing Hr'g Tr., dated May 11, 2016.

570-71 & 1074.  Penny set a nine o'clock curfew for Barrett, and Winkler would return Barrett to their house by that time.  *Id.* at p. 1073.

Winkler met Petitioner and Penny shortly after Barrett moved in with them.  *Id.* at pp. 574, 1072, & 1469-71.  For approximately one month, relations between Winkler and Petitioner were friendly, *id.* at p. 591, but tensions developed over, among other things, certain comments of a sexual nature that Petitioner made to Winkler and Barrett and Winkler's habit of revving his engine, *e.g.*, *id.* at pp. 592, 1279, 1502, & 1507.  Petitioner drank daily and was often drunk when he met Winkler.  *Id.* at pp. 596 & 1084-85.  Due to these tensions with Petitioner, Winkler began calling ahead when he came to pick up Barrett and would arrange to meet her outside.  *Id.* at pp. 594 & 1092.

On December 7, 2009, Winkler returned Barrett home by her curfew and, according to Petitioner, revved his engine in the driveway several times before leaving.  *Id.* at pp. 639 & 1507. Petitioner, who was drunk, *id.* at p. 1508, told Penny that he was tired of the stress of having Barrett living in their house and wanted her to move out.  *Id.* at pp. 1516.  Petitioner then went to Barrett's room at around 11:30 p.m. and told her that she was "causing too much stress" and had seven days to move out.  *Id.* at pp. 1100 & 1288.  Barrett became very upset and called Winkler to come pick her up.  *Id.* at p. 1101.  Barrett then told Penny that Winkler was coming to pick her up.  *Id.* at p. 1102.  Penny tried to discourage Barrett from leaving in the middle of the night, but Barrett began packing her stuff.  *Id.* at pp. 1104 & 1291.  Since Barrett insisted on leaving, Penny called Barrett's mother to come pick her up.  *Id.* at pp. 1291-92.  Sometime between 12:30 a.m. and 1:00 a.m., *id.* at pp. 641 & 1292, Winkler pulled into the driveway.  At that point, a heated argument broke out between Barrett and Penny as Barrett tried to exit the house to leave with Winkler.  Penny told

Barrett that she would not allow her to leave the house until her mother arrived. *Id.* at p. 1106. Barrett nonetheless tried to exit the house through the garage door, but Penny blocked the door and prevented Barrett from using the doorknob. *Id.* at p. 1107. Winkler was able to observe the argument between Penny and Barrett from his car in the driveway, *id.* at pp. 620-21, and called Barrett to determine what was happening, *id.* at p. 623. When Barrett explained that her aunt was not allowing her to leave, Winkler approached the house and told Barrett to try exiting the house from a different door. *Id.* at pp. 653-54 & 656. As Winkler approached the house he began arguing with Penny, and told her that she could not make Barrett stay because she was eighteen. *Id.* at pp. 656, 1110, & 1294. Penny continued to state that she would not allow Barrett to leave until her mother arrived, and called the police. *Id.* at p. 1294. During this time, Petitioner was standing at the back of the garage. *Id.* at pp. 655, 1295, & 1520.

Barrett left the garage door and tried to exit through the front door, which Penny also blocked. *Id.* at pp. 1108-09. Barrett returned to the garage door and was able to unlock and open it, and Winkler was waiting immediately outside the door. *Id.* at pp. 1109-10. Penny grabbed Barrett as she attempted to exit through the door and pulled her backwards into the house. *Id.* at pp. 657-58. Winkler was holding onto Barrett and was also pulled into the house. *Id.* at pp. 657 & 1112. At this point, the accounts of the struggle differ slightly. Winkler claims that Penny pushed him several times and that he did not lay a hand on her. *Id.* at p. 674. Penny and Petitioner, on the other hand, claim that Winkler was pushing and shoving Penny and had his forearm against her throat. *Id.* at pp. 1296 & 1525-26. Penny claims that she told Winkler several times to leave and attempted to push him out of the garage. *Id.* at p. 1298.

Petitioner claims that he attempted to intervene, but that Winkler hit him and he fell down.

*Id.* at pp. 1527-28.  Petitioner states that he then saw his shotgun, which he had set out in expectation of going hunting the following morning.  *Id.* at pp. 1510-11 & 1529.  He observed his wife continue to physically struggle with Winkler, and it appeared to him that Winkler was choking her.  *Id.* at p. 1529.  Petitioner then loaded and cocked the gun and claims that he screamed at Winkler to get out of the house or else he was going to shoot him.  *Id.* at pp. 1530-31.  Petitioner then shot Winkler at close range in his upper left chest.  *Id.* at pp. 680, 693-94, & 814.  Winkler and Barrett claim that Petitioner did not give any warning before shooting.  *Id.* at pp. 682 & 1115.

Winkler and Barrett left the house and drove to a nearby gas station where they awaited the arrival of emergency personnel.  *Id.* at pp. 685-86.  Winkler had "a baseball size hole in the side of his chest" and was taken to Albany Medical Hospital for emergency surgery.  *Id.* at p. 814.  Winkler had no bloodflow to his left arm and surgeons had to replace a damaged artery.  *Id.* at pp. 1172 & 1175.  The surgeons also removed dozens of shotgun pellets from Winkler's body.  *Id.* at p. 1178.  The site of the wound was less than six inches from his heart.  *Id.* at p. 1182.  Winkler went to physical therapy for several months and returned to work in August 2010.  *Id.* at pp. 709-12.

The trial court instructed the jury on Assault in the First Degree, under Penal Law § 120.10(1),[2] and Assault in the Second Degree, under Penal Law § 120.05(2),[3] as an alternative disposition if the jury found Petitioner not guilty of Assault in the First Degree.  *Id.* at p. 1683.  The trial court declined to instruct the jury on reckless Assault in the Second Degree, under Penal Law

---

[2] "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."  N.Y. PENAL LAW § 120.10(1).

[3] "A person is guilty of assault in the second degree when . . . (2) [w]ith intent to cause physical injury to another person, he causes such injury to such person or a third person by means of a deadly weapon or a dangerous instrument . . . ."  N.Y. PENAL LAW § 120.05(2).

§ 120.05(4).[4]  *Id.* at p. 1684.  The trial court gave an expanded definition of intoxication and also instructed the jury on a justification defense, under Penal Law § 35.10.  *Id.* at pp. 1684-85.  The jury returned a verdict of guilty of Assault in the First Degree.  *Id.* at p. 1865.  Petitioner's counsel filed a motion, pursuant to New York Criminal Procedure Law ("CPL") § 330.30(1), to set aside the verdict on the following grounds: (1) the People had not disproved Petitioner's justification defense beyond a reasonable doubt; (2) the People did not establish that Petitioner acted with specific intent to cause Winkler "serious physical injury" as required for Assault in the First Degree under Penal Law § 120.10(1); and (3) the trial court should have charged the jury with Assault in the Second Degree under Penal Law § 120.05(4).  R. Part 1 at pp. SR 1-6.  On May 11, 2011, the trial court orally denied Petitioner's § 330.30(1) motion and sentenced Petitioner to a determinate sentence of ten years incarceration and three years of post-release supervision.  Dkt. No. 7-9, Sentencing Hr'g Tr., dated May 11, 2011, at pp. 5 & 21.

On November 21, 2011, Petitioner filed a *pro se* motion to vacate the judgment, pursuant to CPL § 440.10.  R. Part 1 at pp. SR 8-24.  In his motion, Petitioner argued that (1) the trial court erred in failing to submit to the jury the lesser-included offense of Assault in the Second Degree, pursuant to Penal Law § 120.05(2); and (2) trial counsel was ineffective because he did not request that the lesser-included offense be submitted to the jury.  *Id.*  On September 21, 2012, the county court denied Petitioner's motion under CPL § 440.10(2)(b) because all of the issues raised therein were record based and subject to appellate review.  *Id.* at p. SR 79.  Petitioner sought leave to appeal, *id.* at p. SR 81, which the Appellate Division, Third Department, denied on December 7, 2012, *id.* at p. SR 156.

---

[4] "A person of guilty of assault in the second degree when . . . (4) [h]e recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument."  N.Y. PENAL LAW § 120.05(4).

Petitioner' appellate counsel filed a brief in the Appellate Division, Third Department. *Id.* at pp. SR 177-241. In the brief, counsel contended that: (1) the prosecutor committed misconduct by repeatedly referring to Petitioner's NRA membership in her opening and closing statements, and on cross-examination; (2) the evidence was legally insufficient to disprove Petitioner's justification defense and the verdict was against the weight of the evidence; and (3) the trial court erred in refusing to charge the jury on Assault in the Second Degree, Penal Law § 120.05(4). *Id.* Petitioner filed a *pro se* supplemental brief, in which he argued that his trial counsel was ineffective because he failed (1) to object to Winkler's testimony that he momentarily thought Petitioner had shot a second person; and (2) to fully cross-examine Winkler and Barrett on inconsistent statements they made before the grand jury. *Id.* at pp. SR 243-66.

On November 7, 2013, the Appellate Division unanimously affirmed Petitioner's judgment of conviction. *People v. Simmons*, 974 N.Y.S.2d 185 (N.Y. App. Div. 2013). The Appellate Division rejected Petitioner's contentions as follows: (1) Petitioner's challenge to the sufficiency of the evidence disproving his justification defense was not preserved; (2) the verdict was not against the weight of the evidence; (3) the trial court did not err in refusing to instruct the jury on Assault in the Second Degree under Penal Law § 120.05(4) because there was no reasonable view of the evidence to support a finding that Petitioner acted recklessly; and (4) Petitioner's prosecutorial misconduct claims were largely unpreserved, but Petitioner's gun ownership and NRA membership were "relevant to key disputed issues at trial, including [Petitioner's] intent." *Id.* With respect to Petitioner's ineffective trial counsel claims, the Appellate Division found that (1) Petitioner's claim that Winkler testified to an uncharged crime was unfounded and belied by the record; and (2) Petitioner did not prove that his trial counsel lacked strategic reasons for not cross-examining

-7-

Winkler and Barrett regarding alleged inconsistencies with their grand jury testimony. *Id.* The Appellate Division stated generally of trial counsel's performance that "[v]iewed in the totality, defense counsel vigorously pursued a cogent defense, which included justification and intoxication defenses, effectively cross-examined witnesses, made appropriate objections, and provided overall meaningful representation." *Id.*

Petitioner's counsel sought leave to appeal to the Court of Appeals and Petitioner filed a *pro se* supplemental application. Dkt. No. 7-3, R. Part 3 at pp. SR 475 & 481-85. On April 14, 2014, the Court of Appeals denied leave to appeal. *People v. Simmons*, 22 N.Y.3d 1203 (2014).

Petitioner subsequently filed a *pro se* motion for a writ of error *coram nobis* in the Third Department. R. Part 2 at pp. SR 491-518. In his motion, Petitioner argued that his appellate counsel was ineffective because he failed to assert that: (1) trial counsel was ineffective because he opened the door to evidence that was prejudicial to Petitioner and failed to request a *Ventimiglia-Molineux* hearing to limit evidence of Petitioner's prior bad acts; and (2) the trial court's interested witness instruction was improper. *Id.* The Appellate Division denied the motion on September 9, 2014. Dkt. No. 7-4, R. Part 4 at p. SR 685. Petitioner sought leave to appeal to the Court of Appeals, *id.* at pp. SR 686-92, which was denied on February 28, 2015. *Id.* at p. SR 702.

### B. Summary of Petition

Liberally construed, the Petition raises the following claims for relief: (1) trial counsel was ineffective because he failed (a) to cross-examine Winkler and Barrett on inconsistencies with their grand jury testimony and (b) to object to Winkler's testimony that he believed Petitioner had shot a second person (Ground One); (2) the trial judge violated Petitioner's Fourteenth Amendment rights by refusing to instruct the jury on the lesser included offense of Assault in the Second Degree, under

Penal Law § 120.05(2) (Ground Two); (3) the prosecutor's references to Petitioner's gun ownership and NRA membership deprived Petitioner of a fair trial in violation of the Fourteenth Amendment (Ground Three); (4) the evidence was legally insufficient to: (a) disprove Petitioner's justification defense; (b) establish that Petitioner intended to cause serious physical injury to Winkler; and (c) establish that Winkler suffered serious physical injury (Ground Four); and (5) Petitioner's appellate counsel was ineffective because he failed to raise (a) the ineffectiveness of trial counsel based on his failure to request a *Ventimiglia-Molineux* hearing to limit evidence of Petitioner's prior bad acts and introduction of evidence that opened the door to evidence that was prejudicial to Petitioner and (b) the trial court's interested witness instruction was improper (Ground Five).  *See generally* Pet.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003).  A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as

follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision is an "unreasonable application" of of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)).

## B. Exhaustion

### *1. Legal Standard*

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot

adequately protect petitioner's rights.[5]  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  This exhaustion requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Id.*  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Glover v. Bennett*, 1998 WL 278272, at *1 (N.D.N.Y. May 21, 1998) (quoting *Daye v. Attorney Gen. of New York*, 696 F.2d at 192).[6]

This exhaustion requirement is satisfied if the federal claim has been "fairly presented" to the state courts.  *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court."  *Daye v. Attorney Gen. of New York*, 696 F.2d at 191; *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999).  "Although the petitioner need not have cited 'book and verse on the federal constitution,'

---

[5] 28 U.S.C. § 2254(b) and (c) provide, in part, as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[6] Since AEDPA's restriction on federal *habeas* power was premised upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's review standards apply only to federal claims which have been actually adjudicated on the merits in the state court.  *Washington v. Shriver*, 255 F.3d 45, 62 (2d Cir. 2001).

*-11-*

he must have articulated 'the substantial equivalent' of the federal habeas claim." *Colon v. Artuz*, 174 F. Supp. 2d 108, 114 (S.D.N.Y. 2001) (quoting *Picard v. Connor*, 404 U.S. at 278); *see also Daye v. Attorney Gen. of New York*, 696 F.2d at 194. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye v. Attorney Gen. of New York*, 696 F.2d at 192; *Morales v. Miller*, 41 F. Supp. 2d at 374. In addition, in order for a petitioner to properly exhaust his or her claim, he or she "must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"; this includes presenting "both the factual and legal premise of the federal claims ultimately asserted in the [federal] habeas petition" to the New York Court of Appeals. *Galdemez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (emphasis in original) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)).

### 2. *Unexhausted Claims*

Here, certain of Petitioner's claims were never presented to the state courts and are therefore unexhausted. Specifically, although Petitioner asserted on direct appeal that the evidence was insufficient to disprove his justification defense, R. Part 2 at pp. SR 230-37, he never asserted that the evidence was insufficient to establish his intent to cause serious physical injury to Winkler or that Winkler suffered serious physical injury. Therefore, because these claims were not raised on direct appeal and because Petitioner cannot now raise them in State court, they are deemed exhausted and are procedurally barred. *See Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000) (" New York permits only one application for direct review . . . and having failed to raise the claim on direct appeal [Petitioner] may not seek collateral relief in New York courts.") (citations omitted); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

Petitioner also never exhausted his claim that the trial court erred in failing to instruct the jury on the lesser-included offense of Assault in the Second Degree because that claim was not presented as a federal claim to the State courts.  As summarized by the Second Circuit, "the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within in the mainstream of constitutional litigation." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).  Here, Petitioner raised the issue of the lesser-included offense of Assault in the Second Degree solely in State law terms in his direct appeal.  *See* R. Part 1 at pp. SR 238-40. Neither of the cases cited by Petitioner in his State appeal in support of the claim, *People v. Walston*, 715 N.Y.S.2d 543 (App. Div. 2000) and *People v. Fuller*, 96 N.Y.2d 881 (2001), discuss the issue in federal constitutional terms.  Thus, this claim is also deemed exhausted and procedurally barred.

A federal court may review a procedurally defaulted claim if "the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (internal quotation marks and citations omitted).  To establish legal cause for his or her procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the state's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).  Ineffective assistance of counsel may constitute cause for a procedural default; however, a claim of ineffective assistance of counsel must

first "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. at 488-89; *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006). Here, Petitioner cannot use ineffective assistance of appellate counsel as "cause" for his procedural default of his insufficiency of the evidence and lesser-included offense claims because he never brought a claim in state court asserting that appellate counsel was ineffective due to his failure to raise these claims. *See Sweet v. Bennett*, 353 F.3d 135, 141 n.7 (2d Cir. 2003); *Dick v. Bradt*, 2014 WL 2434489, at *9 n.4 (E.D.N.Y. May 29, 2014). Because Petitioner has not established cause for his procedural default of these claims, the Court need not address prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985). Nor has Petitioner offered any basis to find that the failure to consider these claims will result in a fundamental miscarriage of justice. Accordingly, the Court recommends that the Petition be **denied** with respect to Petitioner's unexhausted insufficiency of evidence and lesser-included offense claims.

## C. Ground One – Ineffective Assistance of Trial Counsel

The standard for an ineffective assistance of counsel claim requires a showing that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In determining the reasonableness of counsel's conduct, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. at 689. Second, "[t]o establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler v.*

*Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *Strickland v. Washington*, 466 U.S. at 694).

The *Strickland* standard is "highly deferential." *Strickland v. Washington*, 466 U.S. at 689. Furthermore, on federal *habeas* review, this standard is "doubly deferential"; "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.*

Petitioner asserts that trial counsel was ineffective because he (1) failed to cross-examine Winkler and Barrett regarding inconsistencies with their grand jury testimony and (2) failed to object to Winkler's testimony that he believed that Petitioner had shot a second person. The Appellate Division rejected both claims and generally stated of trial counsel's performance that he "vigorously pursued a cogent defense . . . and provided overall meaningful representation." *People v. Simmons*, 974 N.Y.S.2d at 981. The Appellate Division determined that Petitioner's claim that trial counsel failed to cross-examine Winkler and Barrett on inconsistent statements was "inaccurate" and that Petitioner had "not persuasively demonstrated the absence of legitimate or strategic reasons for counsel to forgo probing these alleged inconsistencies." *Id.* (citing *People v. Rivera*, 71 N.Y.2d 705, 709 (1988)). As to the claim that counsel failed to object to Winkler's testimony that Petitioner shot a second person, the Appellate Division observed that, contrary to Petitioner's claims, "Winkler did not testify to an uncharged crime by defendant . . . . There was no testimony or evidence that anyone

other than Winkler was shot and, thus, no reason for defense counsel to object." *Id.* Upon review of the record, the Court finds that the Appellate Division's conclusions with respect to Petitioner's claims of ineffective trial counsel were not an unreasonable or improper application of *Strickland*.

First, the Appellate Division correctly found that Petitioner's claim that his trial counsel failed to object to testimony that he shot a second person was without basis in the record. Petitioner argues that the prosecutor elicited "prejudicial testimony" from Winkler that Petitioner had shot another person in his home, which established that Petitioner had a "propensity for shooting people." Dkt. No. 8, Pet'r's Traverse at p. 8. This contention is entirely unsupported by the record. The testimony Petitioner refers to is Winkler's recollection of his realization that he had been shot:

> I remember putting my hand up underneath my armpit. It was full of like a thick red, I'm assuming was blood. Right at then I knew I been shot, so I started spazzing out. I think I was yelling, "Fucking shot me." Excuse my language. "He shot me. I've been shot." Trying to get people people's attention that could call somebody.
>
> Shortly after that, I remember seeing Erika behind the car. Only thing I thought about is he shot somebody again, we need to leave. So I yelled to her to get in the car, we're leaving. And we pretty much left.

Trial Tr. at p. 684.

Thus, the Appellate Division accurately described Winkler's testimony when it stated that "immediately after this shooting he thought, incorrectly, that defendant had also shot one of the others and fled with Barrett." *People v. Simmons*, 974 N.Y.S.2d at 981. Thus, there was "no reason to for defense counsel to object." *Id.* Accordingly, this claim of counsel's ineffectiveness is without merit.

Next, Petitioner argues that trial counsel was ineffective due to his failure to cross-examine Winkler and Barrett regarding alleged inconsistencies with their grand jury testimony. In his *pro se* supplemental Appellate Division brief, Petitioner referred to the following alleged inconsistencies

in Winkler and Barrett's testimony: Winkler claimed that he could see through the walk-through door in the police report, but at trial he claimed that he could see through the overhead garage door; in his grand jury testimony, Winkler recalled "lying across the bumper" of Petitioner's van after being shot, whereas at trial Winkler testified that he was underneath the van; Barrett gave "several different versions" of the moment at which Winkler was shot; in her grand jury testimony Barrett claimed that Petitioner made sexual remarks to her in the living room, but at trial she claimed that the remarks were made in the garage; and defense counsel failed to cross-examine Winkler regarding a scar that he received during surgery and how far inside the garage he was at the time he was shot. R. Part 1 at pp. SR 258-61.

The Appellate Division properly found that Petitioner's identification of purported inconsistencies in Winkler and Barrett's trial and grand jury testimony was largely "inaccurate." Contrary to Petitioner's claim, it does not appear that Barrett stated in her grand jury testimony that she was in the living room when Petitioner made the sexual comments to her. *See id.* at p. SR 300. Furthermore, the other testimony which Petitioner alleges is inconsistent is in fact substantially similar. Specifically, before the grand jury, Winkler remembered "waking up behind [Petitioner's] van parked with its back to the garage" and stated that he was probably "laying right across the bumper." R. Part 2 at pp. SR 283-84. At trial, on the other hand, Winkler stated that he remembered "pulling [him]self up from underneath his one van." Trail Tr. at p. 683. Barrett testified before the grand jury that she remembered Winkler "flying back outside right in front of the van" upon being shot, R. Part 2 at p. SR 296, whereas at the trial she testified that Winkler "stumble[d] back," Trial Tr. at p. 1117. Thus, while there were slight differences in Winkler and Barrett's trial and grand jury testimony, those differences were not material.

The Appellate Division was also correct in finding that Petitioner failed to meet his burden of showing that trial counsel lacked strategic reasons for not probing into these alleged inconsistencies. In the first place, "[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance of claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (citation omitted); *see also Strickland v. Washington*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable."). Petitioner's trial counsel extensively cross-examined Winkler and Barrett, Trial Tr. at pp. 744-89 & 1201-35, and, as Respondent states, confronted them with allegedly inconsistent statements. *See id.* at pp. 761-62, 1146, 1202, 1219-20, 1222-23, & 1233-34. Trial counsel's failure to pursue other minor inconsistencies does not evidence objectively unreasonable representation. Thus, this claim of ineffectiveness is also without merit.

In sum, the Court cannot conclude that trial counsel's representation of Petitioner was objectively unreasonable. A review of the entire trial transcript shows that, as the Appellate Division found, trial counsel "vigorously pursued a cogent defense, which included justification and intoxication defenses, effectively cross-examined witnesses, made appropriate objections, and provided overall meaningful representation." *People v. Simmons*, 974 N.Y.S.2d at 981. The Court therefore need not consider whether Petitioner was prejudiced by trial counsel's representation. *See Strickland v. Washington*, 466 U.S. at 697.

Accordingly, the Court recommends that the Petition be **denied** as to Petitioner's claims for ineffective assistance of trial counsel.

### D. Ground Three – Prosecutorial Misconduct

For *habeas* relief to be granted based upon a claim of prosecutorial misconduct, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Tankleff v. Senkowski*, 135 F.3d 235 (2d Cir. 1998) (stating that "[i]n order to grant relief, we would have to find that the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights"). A *habeas* petitioner raising a claim of prosecutorial misconduct "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). The Second Circuit has held that *habeas* courts should consider the following factors in determining whether prosecutorial misconduct caused actual prejudice: "[1] the severity of the misconduct; [2] the measures adopted to cure the misconduct; and [3] the certainty of conviction absent the improper statements." *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990).

Petitioner claims that the prosecutor committed misconduct by referring to his NRA membership and gun ownership and by introducing a photograph of a plaque Petitioner received from the NRA.

In her opening statement, the prosecutor said the following of Petitioner's gun ownership:

Gun control is being able to hit your target. That's according to the pithy sign hanging in the defendant's garage when the police took photographs of it back on December 8, 2009. Gun control is being able to hit your target.

I bring this up with you because it speaks volumes about his intent back in the timeframe in question, December of 2009.

Next to that gun control is being able to hit your target sign proudly displayed in his garage, is another sign. It's a cartoon. It's a little satire cartoon by Bill Malden and it shows a bunch of townpeople, angry townpeople and they're picketing, they have

*-19-*

signs that say anti-crime or no crime, something of that nature, and it's got two guys who are dressed up to look like they're obviously criminals and the one is saying to the other, "They decided to turn me loose and lynch my pistol."  And in the background, the angry townspeople have a handgun in a noose and they're lynching it.  And the message is, "People who blame guns for crime are stupid.  Guns don't commit crime, people commit crime," something like that.  And that's displayed right next to the defendant's NRA membership plaque, or whatever you want to call it. . . .

I bring up these signs, these slogans, these satires just so you know right from the jump where his mind is during the incident.  Gives you a bright clear window into his intent, into his mindset.

Trial Tr. at pp. 479-81.

Later, the prosecutor introduced into evidence a photograph which depicted Petitioner's NRA plaque and elicited testimony concerning the plaque and other signs.  *Id.* at pp. 948, 954-56, & 1003-04.  The trial judge gave the jury the following instruction:

Ladies and gentlemen, you've seen some pictures and heard some testimony concerning guns in the household and NRA certificate and some other things that were displayed in the garage related to guns.  Just, as you probably know, there's nothing unlawful with being a member of the National Rifle Association or possessing guns lawfully in your home.  So this information should not be considered by you in any negative way from the fact these items were in the residence and they are not offered for that purpose.

So the attorneys will undoubtedly make arguments to you later on concerning the relevance of these objects, but don't be inflamed by them or hold any negative inference against the defendant from them, from the mere fact that he had these items in his residence.

*Id.* at pp. 954-55.

The prosecutor further questioned Petitioner concerning the plaque and signs on cross-examination.  *Id.* at pp. 1550-53.  Petitioner testified that he found the cartoons "funny" and also stated that the NRA plaque, which read "Defender of the Second Amendment," was a gift he received for donating to the organization.  *Id.*

In his closing statement, defense counsel argued that this was "not a case about politics of

the NRA, gun control, the signs, the cartoons and the slogans, which you saw time and time again.
. . . That's nothing more than red herrings. It should not distract you from what this case is about;
was Brian Simmons proven beyond a reasonable doubt not to have been justified in doing what he
did." *Id.* at p. 1696. In response, the prosecutor argued that she was not "attacking the defendant's
political views" but that his beliefs were relevant to his intent because "[a] person who makes pithy
remarks about shooting other people, who jokes around about shooting other people, who believes
those things so intensely that he actually has them as part of the decor of his house, his garage, that
is relevant to whether he acted with the intent to cause serious physical injury." *Id.* at pp. 1726-27.

The Appellate Division found that "[t]estimony concerning defendant's gun ownership, gun
rights signage in the garage and hunting experience, and history of bragging about the accuracy of
his shooting abilities, while arguably unduly repeated, were relevant to key disputed issues at trial,
including defendant's intent in shooting Winkler and his experience with and knowledge of guns,
as the prosecutor argued. The evidence was not improperly adduced to argue that defendant had a
propensity for violence." *People v. Simmons*, 974 N.Y.S.2d at 980. This conclusion was entirely
proper. Whether Petitioner intended to cause Winkler serious physical injury or whether Petitioner
was justified in shooting Winkler was a disputed issue at trial. Petitioner testified that Winkler was
assaulting his wife; that he first looked for his baseball bat to force Winkler out of his house; that
when he was unable to find the baseball bat, he picked up his gun from his ATV and loaded it; that
he was shaking and dropped several bullets on the floor; and that he cocked the gun and screamed
at Winkler to leave his house before shooting him. Trial Tr. at pp. 1529-31. The evidence of
Petitioner's NRA membership and gun rights signage established his experience with and
knowledge of guns, which was relevant to his intent in shooting Winkler.

Furthermore, the prosecutor's comments on Petitioner's gun signage was a fair comment on the evidence. "[S]tatements during summation are permissible if they constitute a fair comment on the evidence at trial and reasonable inference therefrom, or a fair response to remarks made by the defense counsel during summation." *Osorio v. Conway*, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007). The prosecutor's comments were based on reasonable inferences drawn from Petitioner's gun rights signage that Petitioner was experienced with guns and intended to cause Winkler serious physical injury by shooting him. Additionally, the trial court correctly instructed the jury not to draw any negative inferences from the mere fact of Petitioner's NRA membership and gun rights signage.

Thus, the prosecutor's comments regarding Petitioner's gun ownership and NRA membership did not deprive Petitioner of a fair trial. And even if the prosecutor's comments were inappropriate, Petitioner has not established that the comments had a substantial and injurious effect or influence on the jury's verdict. Accordingly, the Court recommends that the Petition be **denied** as to Petitioner's claim for prosecutorial misconduct.

### E.  Ground Four – Sufficiency of the Evidence

As explained above, Petitioner's challenges to the sufficiency of the evidence to establish his intent to cause serious physical injury to Winkler and that Winkler suffered serious physical injury are unexhausted. *See* Part II.B. Therefore, Petitioner's only exhausted insufficiency claim is that the evidence was insufficient to disprove his justification defense beyond a reasonable doubt. Respondent argues that this claim is procedurally barred by adequate and independent state law grounds and is meritless. Dkt. No. 5, Resp't Mem. of Law at pp. 42-48.

Federal *habeas* review of a state-court conviction is generally prohibited if a state court rested its judgment on a state procedural requirement that is "independent of the federal question

and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (explaining that under *Wainwright v. Sykes*, 433 U.S. 72 (1977), "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim"); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). In the context of *habeas* review, "the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism." *Id.* at 730. "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman v. Thompson*, 501 U.S. at 732.

In this case, the Appellate Division held that Petitioner's challenge to the sufficiency of the evidence disproving his justification defense was not preserved for review "as it was not specifically raised in [Petitioner's] motion to dismiss at the close of the People's case." *People v. Simmons*, 974 N.Y.S.2d at 187. Furthermore, while Petitioner asserted in his CPL § 330.30 motion that the People did not establish beyond a reasonable doubt that Petitioner's actions were not justified, the Appellate Division stated that this was not a proper basis for a CPL § 330.30 motion. *Id.* Although the Appellate Division therefore found that Petitioner's challenge to the sufficiency of the evidence disproving his justification defense was procedurally defaulted, it also "necessarily" reviewed the sufficiency of the evidence of each element in considering Petitioner's challenge to the verdict as against the weight of the evidence. *Id.* at 188. In reviewing Petitioner's weight of the evidence claim, the Appellate Division found "that the jury was warranted in finding beyond a reasonable doubt that defendant was not justified in using deadly force and had acted with the requisite intent, and in finding him guilty as charged." *Id.*

A procedural default will only bar federal *habeas* review if "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. at 263; *see also Caldwell v. Mississippi*, 472 U.S. 320, 327 (stating that in order for a state procedural bar to preclude federal court review "the state court must actually have relied on the procedural bar as an independent basis for the disposition of the case"). Here, the Appellate Division expressly held that Petitioner's sufficiency of the evidence claim was procedurally barred. Although the Appellate Division also discussed the merits of Petitioner's justification defense in considering his challenge to the weight of the evidence, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *Harris v. Reed*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even where the state court also relies on federal law."). Thus, the Appellate Division's holding that Petitioner's sufficiency of the evidence claim was procedurally defaulted constitutes an "independent" state ground.

A procedural default must also be "adequate" to bar federal *habeas* review. *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *Cotto v. Herbert*, 331 F.3d 217, 239-40 (2d Cir. 2003). "[A] procedural bar will be deemed 'adequate' only if its is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d at 77 (citation omitted). "State courts may not avoid deciding federal issues by invoking procedural rules that they do not

apply evenhandedly to all similar claims." *Id.* (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)). Furthermore, "the adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (citation omitted)

Under the New York contemporaneous objection rule, "an issue is preserved for appeal as a matter of law only when the appellant objected on that ground during the trial." *Fernandez v. Smith*, 558 F. Supp. 2d 480, 489 (S.D.N.Y. 2008) (citing CPL § 470.05). In order to preserve a challenge to the sufficiency of the evidence a defendant must move for a trial order of dismissal making a specific objection. *E.g.*, *People v. Hawkins*, 11 N.Y.3d 484, 492 (2008). Furthermore, a defendant who moves to dismiss at the close of the People's case must renew that motion at the close of his case in order to preserve the objections raised therein. *People v. Kolupa*, 13 N.Y.3d 786 (2009); *People v. Hines*, 97 N.Y.2d 56, 61 (2001); *People v. Moreland*, 962 N.Y.S.2d 536, 537 (App. Div. 2013); *People v. Raymond*, 876 N.Y.S.2d 264, 265 (App. Div. 2009). It is well established that New York's contemporaneous objection rule is an "adequate" state ground that may bar federal *habeas* review. *See, e.g.*, *Brown v. Ercole*, 353 F. App'x 518, 520 (2d Cir. 2009); *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007); *Garcia v. Lewis*, 188 F.3d at 79; *Sanchez v. Lee*, 2011 WL 924859, at *18 (S.D.N.Y. Mar. 16, 2011); *Fernandez v. Smith*, 558 F. Supp. 2d 480, 489-90 (S.D.N.Y. 2008). Accordingly, the Appellate Division's finding that Petitioner's sufficiency of the evidence claim was not preserved is an "adequate" state ground barring *habeas* review.

A federal *habeas* court may consider a procedurally defaulted claim if "the habeas petitioner can demonstrate 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that

failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. at 749.  While ineffective assistance of counsel may constitute cause for a procedural default, *see Murray v. Carrier*, 477 U.S. 478, 488-89 (1986), Petitioner cannot assert ineffective assistance of trial counsel as cause for his procedurally defaulted insufficiency claim because he never presented such a claim in state court.  *See Sweet v. Bennett*, 353 F.3d 135, 141 n.7 (2d Cir. 2003); *Dick v. Bradt*, 2014 WL 2434489, at *9 n.4 (E.D.N.Y. May 29, 2014).  Therefore, the Court need not address prejudice.  *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985). Additionally, Petitioner does not offer any new evidence indicating his actual innocence.

Accordingly, the Court recommends that the Petition be **denied** as to Petitioner's claim that the evidence was insufficient to disprove his justification defense.

### F.  Ground Five – Ineffective Assistance of Appellate Counsel

The standard for an ineffective assistance of appellate counsel claim is the same as for an ineffective assistance of trial counsel claim.  *See Smith v. Robbins*, 528 U.S. 259, 287 (2000) (stating that the standard for evaluating an ineffective assistance of appellate counsel claim is that articulated in *Strickland v. Washington*, 466 U.S. 668 (1984)); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992).  The standard under *Strickland* again requires a showing that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant.  *Strickland v. Washington*, 466 U.S. at 687.  In regard to ineffective assistance of appellate counsel claims, the Second Circuit has stated:

> In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made.  However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were

clearly and significantly weaker.

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

Petitioner's appellate counsel filed a brief in the Appellate Division that raised three issues: (1) prosecutorial misconduct; (2) sufficiency of the evidence; and (3) the trial court improperly denied Petitioner's request for lesser-included offense charge. R. Part 1 at pp. SR 177-241. Petitioner asserts that his appellate counsel was ineffective for failing to assert the following claims: (1) the trial court's interested witness instruction denied Petitioner a fair trial; (2) trial counsel was ineffective because he (a) failed to request a *Ventimiglia/Molineux* hearing on Petitioner's prior bad acts; and (b) opened the door to prejudicial evidence. The Appellate Division summarily denied Petitioner's motion for a writ of error *coram nobis* on September 9, 2014. R. Part 4 at p. SR 685. Where a state court "summarily rejected [a *habeas* petitioner's] ineffective assistance of counsel claim on the merits without explanation, [the court] must focus on the ultimate decisions of those courts, rather than on the courts' reasoning." *Aeid v. Bennett*, 296 F.3d 58, 62 (2d Cir. 2002).

### *1. Interested Witness Jury Charge*

The trial court instructed the jury to consider a witness's interest or lack thereof in its assessment of credibility as follows:

> You may consider whether a witness has any interest in the outcome of the case or, instead, whether the witness has no such interest. A defendant who testifies is, of course, a person who has an interest in the outcome of the case. You are not required to reject the testimony of an interested witness or to accept the testimony of a witness who has no interest in the outcome of the case. You may, however, consider whether an interest in the outcome or the lack of such interest affected the truthfulness of the witness's testimony.

Trial Tr. at pp. 1775-76.

Petitioner appears to argue that this instruction was improper because it failed to appropriately advise the jury as to when a witness is interested. Traverse at p. 9. Petitioner

*-27-*

specifically argues that Winkler and Barrett were interested witnesses because they had filed a civil suit against him regarding the same set of events as his criminal trial. *Id.*

The Court agrees with Respondent that the trial court's interested witness instruction was proper; therefore, appellate counsel's decision not to appeal Petitioner's conviction on that ground did not fall below an objective standard of reasonableness and the Appellate Division's decision rejecting Petitioner's motion for a writ of error *coram nobis* on this ground was not an unreasonable or improper application of *Strickland*. As Respondent points out, the trial court's interested witness instruction was taken verbatim from the New York pattern jury instructions. *See* CJI2d [NY] Interest/Lack of Interest. Furthermore, Petitioner's trial counsel did not object to the charge to the interested witness instruction; therefore, any claim based thereon was not preserved for review on appeal. Accordingly, it was not objectively unreasonable for Petitioner's appellate counsel to not raise a challenge to the trial court's interested witness on appeal. *See Collier v. Lee*, 2011 WL 2297727, at *8 (E.D.N.Y. June 7, 2011).

### 2. *Ineffective Trial Counsel Based on Introduction of Prejudicial Evidence*

Next, Petitioner argues that appellate counsel should have argued that trial counsel was ineffective because he opened the door to prejudicial evidence. Traverse at p. 10.

This claim concerns recorded statements made by Petitioner on videos taken while he was being transported in a patrol car to the police station. At Petitioner's *Huntley* hearing, the People stated that they did not intend to offer the statements made by Petitioner in the patrol car in their direct case; the *Huntley* hearing instead solely concerned Petitioner's statements to police officers at his house. *Huntley* Hr'gTr., dated Sept. 15, 2010, at pp. 6-7. On cross-examination of Officer Anthony Varrone, who responded to the scene and transported Petitioner to the police station,

Petitioner's counsel inquired into the statements Petitioner made while in the patrol car.  Trial Tr. at pp. 882-83.  Petitioner's counsel elicited that Petitioner had stated that Winkler had been putting his hands on his wife and "throwing her around"; that Winkler had previously "threatened" Petitioner; that Petitioner had been "scared" when Winkler entered the house; and that Petitioner only shot Winkler to get him out of the house.  *Id.*  Petitioner's counsel introduced the video into evidence and the prosecution played it for the jury.  *Id.* at pp. 884 & 886.

On cross-examination of Petitioner, the prosecution inquired at length into additional statements made by Petitioner recorded on the patrol car video.  *See id.* at pp. 1639-64.  The statements the prosecution asked about included: "Don't tell 'em anything, Penny"; "I let my niece move in.  What a fucking jerk I am"; "If I wanted to kill him, I would have killed him"; "I'm in a world of shit"; "I can't take it anymore"; "I fucking had enough."  *Id.* at pp. 1639, 1641-42, 1645, & 1649.  Petitioner argues that these statements were highly prejudicial to his defense and that his counsel had no strategic reason for introducing the video from the patrol car.  Traverse at p. 10.

It is well-established that "actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance of counsel."  *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005); *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) ("[D]ecisions that 'fall squarely within the ambit of trial strategy, and, if reasonably made,' cannot support an ineffective assistance claim." (citation omitted)).  In this case, Petitioner's counsel made a strategic decision to introduce the video from the patrol car into evidence.  Petitioner's counsel offered justification and intoxication defenses, *see* Trial Tr. at pp. 502 & 1684-85, and the statements Petitioner made in the patrol car, as well as the video thereof, were relevant to those defenses.  Petitioner's counsel introduced statements that Petitioner felt "threatened" and "scared" of Winkler and that Petitioner

*-29-*

perceived Winkler "throwing" his wife around, all of which tended to establish Petitioner's justification defense. The video also showed Petitioner's state of intoxication. *See* Trial Tr. at pp. 888-89. While there were additional statements on the video that were not relevant to the justification or intoxication defenses, Petitioner's counsel had reviewed the video, *Huntley* Hr' Tr. at pp. 6-7, and determined that overall it was beneficial to Petitioner's case. Petitioner has not presented any argument to overcome the presumption that this was "sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *see also Crowder v. Green*, 2005 WL 2678811, at *8 (Oct. 20, 2005); *Cromwell v. Keane*, 2002 WL 929536, at *21 (S.D.N.Y. May, 8, 2002). Furthermore, even if Petitioner had established that the decision to introduce the patrol car video was objectively unreasonable, he has not established that the admission of the additional statements contained in the video prejudiced his case such that there was "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694. Accordingly, Petitioner's appellate counsel cannot be found ineffective for choosing not to raise this ineffective assistance of trial counsel claim on appeal.

   *3. Ineffective Trial Counsel Based on Failure to Request a Ventimiglia-Molineux Hearing*

          Finally, Petitioner argues that his appellate counsel should have argued that his trial counsel was ineffective because he failed to request a *Ventimiglia-Molineux* hearing or a limiting instruction regarding Petitioner's prior bad acts or uncharged crimes. Specifically, Petitioner appears to claim that he was prejudiced by the admission of testimony that he (1) drank alcohol heavily, (2) was a NRA member and gun owner, and (3) committed various crude acts while intoxicated. *See* Traverse at p. 11; R. Part 3 at p. SR 514. In this case, there is no basis for finding that Petitioner's trial counsel was ineffective on account of testimony concerning Petitioner's use of alcohol or gun

ownership, and therefore, Petitioner's appellate counsel was not ineffective for failing to assert such a claim on appeal.

First, none of the testimony to which Petitioner objects was evidence of prior bad acts or uncharged crimes, as Petitioner claims; therefore, a *Ventimiglia-Molineux* hearing was not necessary, and his trial counsel was not deficient in failing to raise such a claim. *See People v. Simmons*, 974 N.Y.S.2d at 980 (stating, regarding testimony of Petitioner's gun ownership, "[s]ince this was not evidence of prior bad acts or crimes, a pretrial *Molineux* ruling was not required"). Second, the admission of testimony concerning Petitioner's use of alcohol and NRA membership was proper under state law and was subject to appropriate limiting instructions. As described previously, evidence of Petitioner's NRA membership and gun ownership was relevant to Petitioner's intent and knowledge and experience with guns, and the trial judge gave an appropriate limiting instruction to minimize any prejudice to Petitioner. Similarly, Petitioner's use of alcohol was relevant to his state of mind. Petitioner's intoxication on December 8, 2000, was relevant to whether he was able to form the necessary intent for the commission of Assault in the First Degree. Trial Tr. at p. 1784. Further, at a pretrial hearing, the trial judge found, over Petitioner's counsel's objection, that Petitioner's previous use of alcohol was relevant to his tolerance for alcohol. *Id.* at pp. 19-20. However, the trial judge gave the jury a limiting instruction regarding such testimony:

> [T]he subject or issue of the defendant's consumption of alcohol may be an issue that you may be concerned in some aspects of the deliberations. However, there's nothing illegal about possessing and consuming alcohol in your own home, and do not let this testimony about this area take extra weight with you in your deliberations. It's only for background information and as the subject may relate to what occurred on the date of the crime charged in the indictment. And don't let it overwhelm you or make you think that, under any circumstances, because there's testimony that he was constantly drinking or getting intoxicated, that he's, therefore, a bad person and is, obviously, then guilty of something he's charged with. It's not offered for that reason and it shouldn't be considered by you for that reason.

*Id.* at p. 585

Given that testimony concerning Petitioner's gun ownership and use of alcohol was relevant and subject to appropriate limiting instructions, there was no adequate basis for Petitioner's trial counsel to object further to such testimony. *See Lewis v. Burge*, 2012 WL 2923076, at *7 (W.D.N.Y. July 17, 2012) (finding no basis for trial counsel to object to appropriate limiting instructions); *Williams v. United States*, 2011 WL 3296101, at *7 (S.D.N.Y. July 28, 2011) (same).

Petitioner also contends that he was prejudiced by his trial counsel's failure to object to testimony of certain acts he committed while intoxicated.  Specifically, on cross-examination of Petitioner and his wife, the prosecution asked about incidents where Petitioner allegedly threw animal parts into his neighbor's yard, Trial Tr. at p. 1339; urinated in their yard, *id.* at p. 1340; drove drunk with his dog's leash attached to the car, *id.* at p. 1342 & 1548-49; made sexual advances to female neighbors, *id.* at pp. 1343 & 1561-62; regularly drove drunk, *id.* at p. 1344; and previously discharged his shotgun in his garage.  Petitioner's counsel did not object to any of these questions, but, as Respondent notes, Petitioner and his wife denied that Petitioner had engaged in such conduct. Here, Petitioner has not demonstrated that trial counsel lacked strategic reasons for not objecting to these questions.  "[A]n attorney's failure to object generally is considered a strategic decision." *Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. 2007); *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.").  In this case, Petitioner's counsel may have reasonably made a strategic decision not to object to questions concerning conduct that Petitioner and his wife both denied had occurred.  *See also Nowicki v.*

*Cunningham*, 2014 WL 5462475, at *25 (S.D.N.Y. Oct. 27, 2014) (citing cases for the proposition that an attorney may validly choose not to object to a question in order not to draw attention to it). Additionally, Petitioner cannot demonstrate that the failure to object to these questions resulted in any prejudice to his defense.

In sum, Petitioner's claims that his trial counsel was ineffective for failing to object to testimony and questioning regarding his use of alcohol and gun ownership are meritless. Accordingly, Petitioner's appellate counsel was not ineffective for failing to raise such claim on appeal.

### *4. Summary*

Having found that Petitioner's ineffective assistance of appellate counsel claims are meritless, the Court recommends that the Petition be **denied** as top such claims.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2).[7] Any further request for a COA must be addressed to the Court of Appeals (FED. R. APP. P. 22(b)); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

---

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a *habeas* petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:    February 7, 2017
         Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge